### JOHN BUCHANAN v. HANS J. MARCUSEN.
### BETTY BUCHANAN v. SAME.[1]

February 28, 1936.

Nos. 30,660, 30,661.

[1]Reported in 265 N. W. 319.

*Catherwood, Hughes & Alderson,* for appellant.
*Sasse, French & Dunnette,* for respondents.

I. M. OLSEN, JUSTICE.

Defendant, Hans J. Marcusen, appeals from an order in each of these two cases denying his alternative motion for judgment notwithstanding the verdict, or, if that be denied, then for a new trial. One action is by Betty Buchanan, a minor about seven years of age, by her guardian, to recover damages for personal injuries suffered by her in being struck by an automobile driven by defendant. The other action is by John Buchanan, the father, to recover for doctor's services, hospital, and medical expenses incurred by him in having his daughter treated and cared for on account of her injuries. A verdict was returned in each case in favor of the plaintiff.

Water street, in the city of Austin, is a trunk highway running east and west, generally referred to as a through street. Chatham street comes from the south, at right angles, and enters Water street but does not extend beyond that street. There are business places on both sides of Water street at this point. There are crossing lanes marked out for pedestrians to cross from the south to the north side of Water street, in line with the sidewalks on each side of Chatham street. The plaintiff Betty was crossing Water street from the south to the north side thereof in the crossing lane extending from the sidewalk on the west side of Chatham

street. When she had reached a point about eight feet from the curb or sidewalk on the north side of Water street she was struck by defendant's automobile, coming from the east on Water street. The pavement on each street is, 40 feet wide.

The court instructed the jury as to the statutory law governing the driving of automobiles on a public highway as follows:

"It is the law of this state that any person driving a vehicle upon a public highway shall drive the same at a speed not greater than is reasonable and proper having due regard to the traffic, the surface and width of the highway, and of any other conditions then existing.

"Operating a vehicle at a speed of more than 15 miles per hour on all highways where the same passes through the closely built-up portions in municipalities, or where the traffic is congested, or at a speed of more than 20 miles per hour where the same passes through the residence portion of any municipality shall be prima facie evidence that the operator of said vehicle is driving the same at a speed greater than is reasonable and proper.

"I do not know whether there is any evidence in this case which would justify you in finding that the intersection in question, or the place where the accident happened was in a residence portion of the city. I am inclined to think that the evidence shows that it was within the closely built-up section of the city but you will have the plat before you in this case and I will leave it to the jury as a question of fact for you to determine which it is.

"The driver of any vehicle upon a public highway where the same passes through the closely built-up portions or residence portions of any municipality, shall yield the right of way to a pedestrian crossing such highway within any clearly marked cross-walk, or any regular pedestrian crossing included in the prolongation of the lateral boundary lines of the adjacent sidewalk at the end of a block."

The court then submitted to the jury the question of defendant's negligence and the question of contributory negligence on the part of the child Betty. The charge so given was clear and complete.

The only exception taken to the charge was that the court erred in failing to instruct the jury as to 1 Mason Minn. St. 1927, § 2720-4, subd. (b5), which provides in effect that operating a vehicle at a speed of more than 20 miles an hour on a highway where the same passes through the closely built-up portions of any municipality or where traffic is congested, when traffic on such highway is controlled at intersections by traffic officers or traffic control devices, is *prima facie* a speed greater than is reasonable and proper. The defendant contends that the traffic at this intersection was controlled by a traffic control device and that the jury should have been so instructed, or should have been instructed that it was for the jury to determine whether traffic was so controlled at this intersection. The evidence does not show that defendant was driving at a speed in excess of 20 miles an hour at the time of the accident. There was no traffic officer at the intersection. The only thing there present, which was claimed to be a traffic control device, was an ordinary stop sign on the east side of Chatham street a short distance south of the junction of the two streets. We take it that it was the usual stop sign, facing south on Chatham street, and that it was there to require automobile drivers to come to a stop before entering Water street. The side of the sign toward Water street would be blank, without lettering or any device thereon. It did not require one driving on Water street to stop or even slow up for the intersection. One approaching the intersection on Water street would see only the edge of the sign, if he saw it at all, until he came abreast of the sign, and would then see only a blank board surface. The sign could not and was not intended to control traffic on Water street. Again, the statute uses the term "traffic officers or traffic control devices." The court in its memorandum said:

"When the legislature enacted the law in question and employed the words 'when the traffic on such highway is controlled at intersections by traffic officers or traffic control devices,' it would seem that something more than the use of mere stop signs was intended."

It seems quite clear that the words "traffic control devices," as used in this section of the statutes, mean some device which controls

traffic on both streets at the intersection, such as the ordinary stop-and-go devices now in common use. The trial court correctly construed the statute.

The verdict for $3,750 in the Betty Buchanan case is challenged as excessive. She received very serious injuries. Her two arms were fractured. The left arm was mangled and lacerated, the bone in the upper arm broken into four pieces, and the shoulder dislocated; the skin was loose and pulled down. There were numerous bruises on other parts of her body, and there was much loss of blood. Whether the left arm could be saved or had to be amputated was a serious question with the doctor for some three weeks. There was necessarily great pain, not only at the time of setting the bones and dislocation but during the daily dressing of the left arm for three weeks, so much so that it was necessary to give the child an anesthetic on more than a dozen different occasions. She was in the hospital for five weeks and thereafter regularly attended by the doctor for several months. After she returned home from the hospital about June 26, she wore a brace or splint on the arm until about the time school opened in September. She was confined to the house most of the time during that period. There is a permanent scar running in a circuitous way down the left arm for a considerable distance.

While there has been here a remarkably good recovery under the circumstances, it cannot well be said, in view of the long-continued intense suffering and the permanent disfigurement of the left arm, that the verdict, approved by the trial court, is excessive. Tuttle v. Wicklund, 178 Minn. 353, 227 N. W. 203; Olson v. Purity Baking Co. 185 Minn. 571, 242 N. W. 283; Johnston v. Jordan, 193 Minn. 298, 258 N. W. 433.

No other claimed errors, except the two hereinbefore considered, have been urged here. Other assigned errors have been examined and found not to require discussion.

There is no claim that the verdict in the John Buchanan case is excessive.

The orders appealed from are affirmed.